## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DALTON GUILLOT, at al.**                                    **CIVIL ACTION**

**VERSUS**                                                    **NO. 20-1604**

**JEFFERSON PARISH SHERIFF JOSEPH P.**              **SECTION: "G"(3)**
**LOPINTO, III, et al.**

## ORDER AND REASONS

In this litigation, Plaintiffs Dalton Guillot, Destiny Guillot, Emma Mauer on behalf of

minor child E.M, and Lindsey Margiotta on behalf of minor children L.G. and R.G. (collectively,

"Plaintiffs") allege that the constitutional rights of their deceased father, Marshall Guillot, were

violated by Jefferson Parish Sheriff Joseph P. Lopinto, III ("Lopinto"), CorrectHealth Jefferson,

LLC ("CHJ"), and Ironshore Specialty Insurance Co. ("Ironshore") (collectively, "Defendants").[1]

Before the Court is CHJ's Motion to Dismiss[2] and Ironshore's Motion to Dismiss,[3] both filed

pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs oppose both motions.[4] Also before

the Court is Plaintiffs' Motion to Exclude Attachments to the Motions to Dismiss.[5] CHJ and

Ironshore oppose this motion.[6] Having considered the motions, the memoranda in support and in

opposition, the record, and the applicable law, the Court denies the motion to exclude attachments,

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 11.

[3] Rec. Doc. 17.

[4] Rec. Doc. 21.

[5] Rec. Doc. 23.

[6] Rec. Doc. 31.

denies the motions to dismiss without prejudice, and grants Plaintiffs leave to amend the Complaint to address the deficiencies noted herein if possible.

## I. Background

On June 3, 2020, Plaintiffs filed a complaint in this Court.[7] Plaintiffs named Lopinto (the Sheriff of Jefferson Parish), CHJ (a limited liability company that provides medical services to inmates of the Jefferson Parish Correctional Center), and Ironshore (a limited liability company that issued a liability insurance policy to CHJ) as defendants.[8]

In the Complaint, Plaintiffs allege that their father, Marshall Guillot ("Guillot"), was arrested on May 26, 2019, and charged in the 24th Judicial District Court for the Parish of Jefferson with unauthorized entry of an inhabited dwelling, home invasion, intimidating a witness, domestic abuse battery, misdemeanor theft, misdemeanor criminal neglect of family, felony theft, and misdemeanor disturbing the peace.[9] According to the Complaint, Guillot asserted that he was innocent of all charges.[10] Plaintiffs claim that Guillot had an initial hearing on May 31, 2019, where his bail was set at $120,500.00.[11] After the initial hearing, Guillot was taken to the Jefferson Parish Correctional Center.[12] Plaintiffs contend that Guillot was "very upset and crying" during this time.[13]

---

[7] Rec. Doc. 1.

[8] *Id.* at 3–4, 15.

[9] *Id.* at 4.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

2

Plaintiffs allege that upon arrival at the Jefferson Parish Correctional Center, Guillot was interviewed by an employee of CHJ, who noted that Guillot "had a prior mental health history including Post-traumatic Stress Disorder, Major Depression, and Anxiety."[14] Plaintiffs allege that the same CHJ employee also noted Guillot's use of a medication for depression and requested Guillot's medical records.[15] Plaintiffs claim that a second CHJ employee then performed a physical examination of Guillot and, despite finding that Guillot's "attitude, affect/mood, hallucinations, and homicidal/suicidal assessments were all within normal limits," the employee ordered a mental health appointment for Guillot "marked as high priority."[16] Plaintiffs allege that another mental health appointment was set up for Guillot, again marked as high priority, but was rescheduled several times.[17] Plaintiffs claim that Guillot was not given his depression medication while incarcerated.[18]

Plaintiffs allege that Guillot was involved in a fight with another inmate on June 3, 2019.[19] Plaintiffs claim that Guillot was put into isolated housing on June 4, 2019.[20] Plaintiffs allege that the next day, June 5, 2019, Guillot committed suicide by "hang[ing] himself from the window grate in his private cell, using a bed sheet."[21]

---

[14] *Id.* at 5.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 6.

[18] *Id.* at 14.

[19] *Id.* at 6.

[20] *Id.*

[21] *Id.*

According to the Complaint, Guillot made several calls to his mother before his death.[22] During one of the recorded phone calls, Plaintiffs allege that Guillot told his mother he was having suicidal thoughts.[23] Despite jail staff having actual knowledge of Guillot's suicidal ideation, Plaintiffs contend that they failed to classify him as suicidal.[24]

In the instant suit, Plaintiffs claim that Defendants failed to "properly assess [Guillot] as a suicide risk, or even a potential risk, in spite of the fact that he presented at the jail informing them of prior hospitalization for psychiatric needs, and a diagnosis of anxiety, major depression, and Post Traumatic Stress Disorder (PTSD)."[25] Plaintiffs allege that Defendants "exhibited a wanton and reckless disregard for Mr. Guillot's safety by placing him in a private cell without a cell mate, and doing nothing to prevent his suicide."[26] Plaintiffs assert that Defendants knew that Guillot was displaying "despair/hopelessness, great concern regarding 'what will happen to [him],' verbalization of a suicide plan, extreme restlessness exhibited by such behavior as continuous pacing, depressed state indicated by crying or insomnia, and concerns over events with significant others," yet Defendants still "failed to classify him as an actively suicidal inmate."[27]

Additionally, Plaintiffs allege that Defendants were on notice of the possibility of inmates committing suicide in isolated housing because three other inmates had previously committed

---

[22] *Id.* at 7.

[23] *Id.*

[24] *Id.*

[25] *Id.* at 1–2.

[26] *Id.* at 2.

[27] *Id.* at 7–9, 11.

suicide in the same manner as Guillot in solitary cells at the Jefferson Parish Correctional Center.[28] Plaintiffs allege that despite this history and despite being advised to alter the window bars in the solitary cells, Defendants failed to replace the window grates in the cells, failed to "monitor[] prisoners who are an obvious suicide risk," and "made a choice to place a prisoner who is clearly a self-proclaimed suicide risk in an area of the prison where it is difficult for Defendants and their employees to see inside the cells."[29]

Plaintiffs bring two claims under 42 U.S.C. § 1983: (1) Plaintiffs allege that Lopinto and CHJ failed to manage, train, and supervise their staff and medical personnel at the jail in violation of the Eighth and Fourteenth Amendments and (2) Plaintiffs allege that Lopinto and CHJ deprived Guillot of adequate medical care in violation of the Fourteenth Amendment.[30] Plaintiffs also bring a claim against Defendants for intentional infliction of emotional distress under Louisiana law.[31]

On July 31, 2020, CHJ filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[32] On August 21, 2020, Ironshore filed a motion to dismiss, in which Ironshore fully adopted the arguments made in CHJ's motion.[33] Plaintiffs filed an opposition to both motions on September 15, 2020.[34] On October 2, 2020, with leave of Court, CHJ filed a reply in further

---

[28] *Id.* at 7

[29] *Id.* at 8–9.

[30] *Id.* at 16–17.

[31] *Id.* at 16.

[32] Rec. Doc. 11.

[33] Rec. Doc. 17.

[34] Rec. Doc. 21.

support of the motion to dismiss.[35] On September 15, 2020, Plaintiffs filed a motion to exclude the attachments to CHJ and Ironshore's motions to dismiss.[36] CHJ and Ironshore filed an opposition to the motion to exclude on September 29, 2020.[37]

## II. Parties' Arguments

### A.   *Motion to Dismiss*

#### 1.   CHJ's Arguments in Support of the Motion to Dismiss

CHJ asserts that Plaintiffs' claims for inadequate medical care under 42 U.S.C. § 1983 and intentional infliction of emotional distress under Louisiana law should be dismissed. First, CHJ contends that Plaintiffs have not met their burden of alleging that Guillot received inadequate medical care.[38] According to CHJ,  a plaintiff bringing a claim for inadequate medical care under Section 1983 must demonstrate deliberate indifference by prison officials.[39] CHJ argues that Plaintiffs must show that prison officials subjectively knew of a serious risk to Guillot's health and refused to provide medical care.[40] CHJ contends that officials in the instant case were not subjectively aware that Guillot was at risk of committing suicide because Guillot never reported

---

[35] Rec. Doc. 34.

[36] Rec. Doc. 23.

[37] Rec. Doc. 31.

[38] Rec. Doc. 11-1 at 5.

[39] *Id.*

[40] *Id.* at 5–6.

suicidal thoughts to medical personnel.[41] Accordingly, CHJ argues that Plaintiffs have failed to allege facts sufficient to show inadequate medical care.[42]

CHJ further asserts that Plaintiffs' claim that CHJ was deliberately indifferent to Guillot's medical needs should be dismissed because Plaintiffs have failed to allege a pattern or policy of inadequate medical care.[43] According to CHJ, Plaintiffs must show that CHJ had a policy in place that "led them to be deliberately indifferent toward [Guillot]'s medical care."[44] CHJ claims that Plaintiffs have failed to show any such policy that would implicate CHJ.[45]

Finally, CHJ argues that Plaintiffs' claim for intentional infliction of emotional distress is "insufficient to meet the pleading standard" because Plaintiffs "provide no specific factual allegations" and instead only "conclusory allege" the tort claim.[46] To state a claim for intentional infliction of emotional distress, CHJ notes that Plaintiffs must allege facts to show: (1) extreme and outrageous conduct, (2) severe emotional distress, and (3) Defendants intentionally or recklessly caused such emotional distress.[47] CHJ contends that Plaintiffs fail to "provide a single fact to support" their claim.[48]

---

[41] *Id.* at 8.

[42] *Id.*

[43] *Id.* at 9.

[44] *Id.* at 10.

[45] *Id.* at 11.

[46] *Id.* at 8–9.

[47] *Id.* at 9.

[48] *Id.*

Ironshore's motion to dismiss incorporates all of CHJ's arguments.[49] It does not add any further arguments.

### 2. Plaintiffs' Arguments in Opposition to the Motions to Dismiss

Plaintiffs respond by first emphasizing the high standard CHJ and Ironshore must meet in order to succeed on the motions to dismiss.[50] Plaintiffs assert that "after institution of discovery, more documents will be uncovered, expert opinions will be rendered, and evidence will show that all of the allegations in the Complaint will be proven as true," but Plaintiffs contend that CHJ and Ironshore "should not be allowed to enforce that burden at this stage in the proceedings."[51]

Next, Plaintiffs argue that Defendants violated CHJ's Suicide Prevention Policy when they failed "to identify a known suicide risk."[52] Plaintiffs allege that CHJ "should have collaborated with jail staff and ensured that certain measures were taken in accordance with their own policies" but that "they failed to do so."[53]

Plaintiffs further allege that they have pleaded adequate facts in support of their claim that Guillot received inadequate medical treatment.[54] Plaintiffs claim that CHJ knew that Guillot was a suicide risk but denied Guillot his medication for depression and failed to provide Guillot with

---

[49] Rec. Doc. 17.

[50] Rec. Doc. 21 at 2–6.

[51] *Id.* at 5. Plaintiffs also assert that Defendants' inclusion of certain attachments to the motions to dismiss was inappropriate and unlawful. Plaintiffs then filed a separate motion to exclude these attachments. Because this is discussed below in Section B, it will not be discussed here.

[52] *Id.* at 6.

[53] *Id.*

[54] *Id.* at 7.

"any other psychiatric treatment whatsoever."[55] Plaintiffs contend that it "is a reasonable inference for the Court to assume that Mr. Guillot's symptoms of depression would go unchecked if he was not given the proper medication."[56] After discovery is completed, Plaintiffs assert that they will present evidence "that will unequivocally show that Defendants knew of the substantial risk of suicide, simply by denying depression medication to a patient without a weaning process, and especially under Mr. Guillot's circumstances."[57]

### 3. CHJ's Arguments in Further Support of the Motion to Dismiss

In reply, CHJ reasserts that Plaintiffs have failed to state a claim for inadequate medical care under Section 1983 because they have not alleged facts to show deliberate indifference.[58] CHJ contends that Plaintiffs have not alleged that prison officials either had subjective awareness that Guillot was at a substantial risk of committing suicide or that officials intentionally disregarded this risk.[59] CHJ asserts that Guillot's medical records show that officials were not aware of any suicidal thoughts or tendencies of Guillot but instead that Guillot himself denied having any such thoughts.[60] CHJ further alleges that an incorrect diagnosis, even if true, is not sufficient to prove deliberate indifference.[61]

---

[55] Id.

[56] Id. at 8.

[57] Id.

[58] Rec. Doc. 34 at 1. CHJ provides arguments for why the attachments to its motion to dismiss are permissible, in response to Plaintiffs' claims that such attachments should be excluded. Because this is discussed below in Section B, it will not be discussed here.

[59] Id.

[60] Id. at 7–8.

[61] Id. at 8–9.

CHJ asserts that Plaintiffs' silence in the opposition brief regarding the intentional infliction of emotional distress claim "bolsters" CHJ's claim that it should be dismissed.[62] CHJ argues that "neither [Plaintiffs'] Complaint nor Opposition puts forth a single specific factual allegation sufficient to meet the high burden of intentional infliction of emotional distress."[63]

**B.    *Motion to Exclude Attachments***

**1.    Plaintiffs' Arguments in Support of the Motion to Exclude**

Plaintiffs argue that CHJ and Ironshore should not be permitted to attach Guillot's medical records to the motions to dismiss.[64] Plaintiffs assert that a court can only consider pleadings when deciding a motion to dismiss.[65] Plaintiffs note that they did not attach the documents to the Complaint and CHJ and Ironshore have not yet submitted an answer.[66] Therefore, Plaintiffs assert that the documents are not a part of the pleadings and cannot be considered on a motion to dismiss.[67] Plaintiffs claim that permitting the inclusion of the attachments would "undermine the spirit and purpose" of Federal Rule of Civil Procedure 12(b)(6).[68]

---

[62] *Id.* at 9.

[63] *Id.*

[64] Rec. Doc. 23.

[65] Rec. Doc. 23-3 at 2.

[66] *Id.*

[67] *Id.*

[68] *Id.*

### 2.    CHJ and Ironshore's Arguments in Opposition to the Motion to Exclude

CHJ and Ironshore counter Plaintiffs' motion by arguing that the attachments were properly included with the motions to dismiss.[69] CHJ and Ironshore assert that attachments to a motion to dismiss can be considered if "they are referred to in the plaintiff's complaint and are central to her claim."[70] CHJ and Ironshore claim that Plaintiffs referenced the attached medical records in the Complaint and that the attachments are "central to Plaintiffs' claims for medical indifference" and therefore, it was permissible to attach the medical records to the instant motions to dismiss.[71]

### III. Legal Standards

#### A.    Legal Standard on a Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[72] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[73] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[74]

The "[f]actual allegations must be enough to raise a right to relief above the speculative

---

[69] Rec. Doc. 31.

[70] *Id.* at 3.

[71] *Id.* at 4–7.

[72] Fed. R. Civ. P. 12(b)(6).

[73] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[74] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

level."[75] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[76] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[77]

Although a court must accept all "well-pleaded facts" as true, a court need not accept legal conclusions as true.[78] "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations."[79] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[80] If the factual allegations are insufficient to raise a right to relief above the speculative level, or an "insuperable" bar to relief exists, the claim must be dismissed."[81]

A court considering a motion to dismiss "must limit itself to the contents of the pleadings, including attachments thereto."[82] Attachments to a motion to dismiss are, however, "considered part of the pleadings" if "they are referred to in the plaintiff's complaint and are central to her claim."[83] "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the

---

[75] *Twombly*, 550 U.S. at 555. Put another way, a plaintiff must plead facts that allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

[76] *Iqbal*, 556 U.S. at 678.

[77] *Id*.

[78] *Id.* at 677–78.

[79] *Id*. at 679.

[80] *Id*. at 678.

[81] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[82] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[83] *Id*. at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993))

suit, and the court in making the elementary determination of whether a claim has been stated."[84]

## B.   *Corporate Liability Under 42 U.S.C. § 1983*

42 U.S.C. § 1983 provides that every "person" who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or "causes to be subjected," any person to the deprivation of any federally protected rights, privileges, or immunities shall be civilly liable to the injured party. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law."[85] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[86] The Supreme Court has held that "[t]o act 'under color' of law does not require that the accused be an officer of the state."[87]

"Under the Supreme Court's 'public function' test, a private entity acts under color of state law 'when that entity performs a function which is traditionally the exclusive province of the state.'"[88] "Alternatively, state action may be found where there is a nexus between the state and the action of the private defendant such that the action is fairly attributable to the state."[89] This means "the plaintiff must show: (1) that the deprivation was caused by the exercise of some right

---

(internal quotation marks omitted).

[84] *Carter v. Target Corp.*, 541 F. App'x 413, 416–17 (5th Cir. 2013) (quoting *Collins*, 224 F.3d at 498–99).

[85] *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting 42 U.S.C. § 1983).

[86] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

[87] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (internal quotation marks and citation omitted).

[88] *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460 (5th Cir. 2003) (quoting *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989)).

[89] *Wong*, 881 F.2d at 202.

or privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may fairly be said to be a state actor."[90] A plaintiff can make such a showing by demonstrating that "the private citizen was a willful participant in joint activity with the State or its agents."[91] However, "State action will not accrue merely because of government acquiescence or approval of the private entity's actions."[92]

The Supreme Court has held that municipal entities are "persons" under the definition of § 1983.[93] Such an entity may, however, not be held liable under Section 1983 based upon a theory of vicarious liability or *respondeat superior*.[94] Instead, a plaintiff must allege three things: (1) an "official policy or custom 'was a cause in fact of the deprivation of rights inflicted,'[95] (2) the policy "served as a moving force" behind the constitutional violation,[96] and (3) the policy was decided on by a policymaker with "either actual or constructive knowledge of the alleged policy."[97]

---

[90] *Priester v. Lowndes Cnty.*, 354 F.3d 414, 423 (5th Cir.), *cert. denied* 543 U.S. 829 (2004) (citing *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988)).

[91] *Id.* at 420 (internal quotation marks omitted) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)).

[92] *Id.* at 423 (citing *Yeager v. City of McGregor*, 980 F.2d 337, 342 (5th Cir. 1993)).

[93] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985).

[94] *Green v. Albertson's, Inc.*, 67 F. App'x 248, at *2, n.3 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

[95] *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)).

[96] *Id.* (internal citations and quotation marks omitted).

[97] *Cox v. City of Dallas*, 430 F.3d 734, 748–49 (5th Cir. 2005) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

To satisfy the first requirement, the Supreme Court, in *Monell v. Department of Social Services of New York*, set out the possible methods of showing a policy or custom: "(1) [an] express policy of violating the Constitution, (2) a widespread practice or custom—even if that custom has not received formal approval by an official decision-making body—or (3) a decision by an individual with express policy-making authority."[98] Under Fifth Circuit precedent, a custom may be evidenced by "a persistent, widespread practice of [] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [corporate] policy . . . Actions of officers or employees of a [corporation] do not render the [corporation] liable under section 1983 unless they execute official policy. . . ."[99] This standard requires that "[the] actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [corporate] employees."[100] "Isolated unconstitutional actions by [corporate] employees will almost never trigger liability,"[101] and "[a] customary [corporate] policy cannot ordinarily be inferred from single constitutional violations."[102]

---

[98] *Cardenas v. Lee Cty., Tex.*, 569 F. App'x 252, 255 (5th Cir. 2014) (citing *Monell,* 436 U.S. at 690–91).

[99] *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir. 1984) (en banc)).

[100] *Webster*, 735 F.2d at 842.

[101] *Piotrowski*, 273 F.3d at 578 (citing *Bennett v. City of Slidell,* 728 F.2d 762, 768 n. 3 (5th Cir. 1984)).

[102] *Id.* at 581.

15

## IV. Analysis

### A.   Whether Attachments to the Motions to Dismiss Should be Excluded

As an initial matter, the Court considers Plaintiffs' argument that the Court should exclude the medical records CHJ and Ironshore attached to the motions to dismiss. Generally, a court considering a motion to dismiss "must limit itself to the contents of the pleadings, including attachments thereto."[103] However, the "weight of authority in the Fifth Circuit"[104] has held that attachments to a defendant's motion to dismiss are to be considered as part of the pleadings if such attachments "are referred to in the plaintiff's complaint and are central to her claim."[105]

Plaintiffs urge this Court to exclude the medical records CHJ and Ironshore attached to the motions to dismiss.[106] Specifically, these medical records include Guillot's intake form, exam forms, appointment information, chart notes, medical problems, and vital signs all completed by personnel working for the Jefferson Parish Correctional Center and CHJ.[107] CHJ and Ironshore urge this Court to consider the attachments in ruling on the motions to dismiss because the medical

---

[103] *Collins*, 224 F.3d at 498; *see also Clayborne v. Rainbow Apparel Companies*, No. CIV.A. 12-1879, 2013 WL 2444663, at *3 (E.D. La. June 4, 2013) (Brown, J.).

[104] *Borders v. Chase Home Fin. L.L.C.*, No. CIV.A. 09-3020, 2009 WL 1870916, at *4 (E.D. La. June 29, 2009) (Barbier, J.); *see also In Re Katrina Canal Breaches*, 495 F.3d 191, 205 (5th Cir. 2007) ("[B]ecause the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss."); *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim ....").

[105] *Collins*, 224 F.3d at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)) (internal quotation marks omitted); *Harris v. Lovett*, No. CV 18-857, 2019 WL 4640319, at *1 (E.D. La. Sept. 24, 2019) (Barbier, J) ("As Plaintiff's pleadings refer to his medical records and he brings a claim of medical indifference . . . , his medical records are properly considered here").

[106] Rec. Doc. 23.

[107] Rec. Doc. 11-2.

16

records are mentioned throughout the Complaint and are central to Plaintiffs' claims.

The medical records are referenced in detail throughout the Complaint.[108] The medical records are also central to Plaintiffs' claims that Guillot received inadequate medical care. Because the medical records are referred to numerous times in the Complaint and are central to Plaintiffs' claims against CHJ and Ironshore, it is permissible for CHJ and Ironshore to attach the records to the motions to dismiss. Accordingly, the attachments will not be excluded.

**B.   *Motions to Dismiss***

**1.     Section 1983 Claims**

In the Complaint, Plaintiffs bring two claims against CHJ and Ironshore (as CHJ's insurer) under 42 U.S.C. § 1983: (1) Plaintiffs allege that CHJ provided inadequate medical care to Guillot in violation of the Fourteenth Amendment and (2) Plaintiffs allege that CHJ failed to supervise its employees in violation of the Eighth and Fourteenth Amendments.[109] As explained above, for CHJ, a corporate entity, to be held liable under 42 U.S.C. § 1983, Plaintiffs must allege that (1) an official policy or custom of CHJ (2) "served as a moving force" behind the constitutional violation[110] and (3) the policy was decided on by a municipal policymaker with "either actual or constructive knowledge of the alleged policy."[111]

In the motions to dismiss, CHJ and Ironshore do not address Plaintiff's claim that

---

[108] Rec. Doc. 1 at 5–6, 15 (**On the intake screening form**, Wadlington noted that Marshall Guillot had a prior mental health history including Post-traumatic Stress Disorder, Major Depression, and Anxiety.") ("Crystal Bradley, another employee of Correct Health Jefferson, LLC, performed a physical assessment on Marshall Guillot. **On the intake form**, she noted in four separate responses that in regards to Mr. Guillot's mental health, that his attitude, affect/mood, hallucinations, and homicidal/suicidal assessments were all "within normal limits.") (emphasis added).

[109] *Id.* at 15–17.

[110] *Spiller*, 130 F.3d at 167.

[111] *Cox*, 430 F.3d at 748–49 (citing *Piotrowski*, 237 F.3d at 579).

Defendants failed to supervise their employees. Instead, CHJ and Ironshore argue that Plaintiffs cannot maintain a claim for a violation of Guillot's constitutional rights because they cannot show that CHJ was deliberately indifferent to Guillot's serious medical needs..[112] CHJ and Ironshore also argue that Plaintiffs have not alleged a policy of inadequate medical care as is required for corporate liability under *Monell*.[113]

A pretrial detainee should "look to the procedural and substantive due process guarantees of the Fourteenth Amendment," guarantees that include "constitutional essentials like medical care and safety."[114] The Fifth Circuit has held that "[p]retrial detainees have a Fourteenth Amendment right to be protected from a known risk of suicide."[115] "[I]t is well-settled law that jail officials violate this right if they gained actual knowledge of the substantial risk of suicide and responded with deliberate indifference."[116] To state a claim for inadequate medical care under the Fourteenth Amendment, then, Plaintiffs must allege that (1) CHJ had actual knowledge of a significant risk of suicide and (2) acted with deliberate indifference by disregarding a known or obvious consequence of its actions.[117]

CHJ and Ironshore argue that Plaintiffs cannot show that CHJ was deliberately indifferent to Plaintiffs' serious medical needs because the medical records demonstrate that Guillot never

---

[112] Rec. Doc. 11-1 at 6.

[113] *Id.* at 8.

[114] *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000).

[115] *Converse v. City of Kemah, Texas*, 961 F.3d 771, 775 (5th Cir. 2020).

[116] *Id.* (quoting *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996)) (internal quotation marks omitted).

[117] *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)) (internal quotation marks omitted).

reported suicidal ideation to medical personnel.[118] However, Plaintiffs have pleaded facts to suggest that CHJ staff members were aware of Guillot's mental health problems but failed to administer Guillot's depression medication or offer other mental health treatment.[119]

Specifically, Plaintiffs allege—and the medical records confirm—that Guillot was initially interviewed by a CHJ employee on May 26, 2019, the date of his arrest.[120] On the intake screening form, the employee noted that Guillot had a prior history of "Post-traumatic Stress Disorder, Major Depression, and Anxiety."[121] The same CHJ employee also noted Guillot's use of a medication for depression and requested Guillot's medical records.[122] A second CHJ employee then performed a physical examination of Guillot.[123] Despite finding that Guillot's "attitude, affect/mood, hallucinations, and homicidal/suicidal assessments were all within normal limits," the employee ordered a mental health appointment for Guillot "marked as high priority."[124] Another mental health appointment was set up for Guillot, again marked as high priority, but was rescheduled several times.[125] Despite these facts, Plaintiffs claim that Guillot never received any mental health treatment and was not given his depression medication while incarcerated.[126]

---

[118] Rec. Doc. 11-1 at 6.

[119] Rec. Doc. 1 at 14.

[120] Rec. Doc. 1 at 5; Rec. Doc. 11-2 at 1–2.

[121] Rec. Doc. 1 at 5; Rec. Doc. 11-2 at 2, 10.

[122] Rec. Doc. 1 at 5; Rec. Doc. 11-2 at 8, 15.

[123] Rec. Doc. 1 at 5; Rec. Doc. 11-2 at 10–13.

[124] Rec. Doc. 1 at 5; Rec. Doc. 11-2 at 12, 15.

[125] Rec. Doc. 1 at 6; Rec. Doc. 11-2 at 16–17.

[126] Rec. Doc. 1 at 9, 14.

Plaintiffs allege that Guillot told his mother during a recorded phone call that he was having suicidal thoughts.[127] Plaintiffs also allege that Guillot was displaying all of the signs of suicidal ideation as set forth in CHJ's Suicide Prevention Policy, including "despair/hopelessness, great concern regarding 'what will happen to [him],' verbalization of a suicide plan, extreme restlessness exhibited by such behavior as continuous pacing, depressed state indicated by crying or insomnia, and concerns over events with significant others."[128] Despite these signs, Plaintiff's assert that CHJ employees still "failed to identify Mr. Guillot as an actively suicidal inmate [] violating the terms of their own policy."[129] Viewing these allegations in the light most favorable to Plaintiffs, Plaintiffs have alleged that CHJ employees had actual knowledge of a significant risk of suicide with respect to Guillot and nonetheless acted with deliberate indifference to Guillot's serious medical needs by failing to classify him as suicidal, failing to provide mental health treatment, and failing to administer his depression medication.

Because CHJ is a corporate entity, *Monell* requires that Plaintiffs allege that CHJ had a policy of denying appropriate access to medical care to inmates through either (1) an express policy of CHJ, (2) a widespread practice, or (3) a decision by a policymaker.[130] To survive a motion to dismiss, the complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts."[131] "[P]leadings are sufficient when they make specific factual allegations that allow a court to reasonably infer

---

[127] *Id.* at 7.

[128] *Id.* at 11.

[129] *Id.* at 11–12.

[130] *Cardenas*, 569 F. App'x at 255 (citing *Monell*, 436 U.S. at 690–91).

[131] *Balle v. Nueces Cty.*, 952 F.3d 552, 559 (5th Cir. 2017) (quoting *Spiller*, 130 F.3d at 167).

that a policy or practice exists and that the alleged policy or practice was the moving force behind municipal employees' deliberate indifference to an inmate's serious medical needs."[132]

Plaintiffs do not allege that an express policy or decision by a policymaker at CHJ was the moving force behind CHJ employees' deliberate indifference to Guillot's serious medical needs. Plaintiffs also have not alleged specific facts to show that CHJ had a widespread practice that was the moving force behind CHJ employees' deliberate indifference to Guillot's serious medical needs. With respect to a pattern or widespread practice, Plaintiffs point to the fact that three inmates previously committed suicide at the Jefferson Parish Correctional Center.[133] Plaintiffs allege that those three inmates were on suicide watch prior to their deaths, but David Jennings—a social worker employed by the sheriff's office—removed them from suicide watch.[134] These allegations relate to conduct of a sheriff's office employee, not an employee of CHJ. These allegations standing alone are not sufficient for the Court to reasonably infer that a widespread practice of CHJ was the moving force behind CHJ employees' deliberate indifference to Guillot's serious medical needs. Additionally, these allegations suggest that the three inmates who previously committed suicide *were* classified as suicidal before their deaths, whereas in this case Plaintiffs contend that CHJ employees acted with deliberate indifference to Guillot's serious medical needs by failing to classify him as suicidal.

Even accepting as true Plaintiffs' allegation that CHJ employees provided Guillot with inadequate medical care by failing to diagnose him as a suicide risk, failing to provide mental

---

[132] *Id*. (citing *Colle v. Brazos Cty.*, 981 F.2d 237, 245 (5th Cir. 1993)).

[133] Rec. Doc. 1 at 7.

[134] *Id*.

health treatment, and failing to administer depression medication, Plaintiffs have not alleged any facts to show that this was a widespread practice or custom of CHJ. Without a showing of a policy or practice of denying inadequate medical care to suicidal inmates, Plaintiffs have not adequately alleged corporate liability under § 1983.

However, although Plaintiffs have not pleaded facts to form the basis of a § 1983 inadequate medical care claim against CHJ, this does not mean that they could not do so. Short of granting a motion to dismiss, the Court may grant Plaintiffs leave to amend the Complaint. Accordingly, at this time, the Court will deny CHJ and Ironshore's motions to the extent they seek dismissal of Plaintiffs' claim under § 1983 for inadequate medical care and grant Plaintiffs leave to amend the Complaint to address the deficiencies noted above, if possible.[135]

### 2.     The Intentional Infliction of Emotional Distress Claim

Plaintiffs also bring an intentional infliction of emotional distress claim against CHJ and Ironshore.[136] To prevail on an intentional infliction of emotional distress claim under Louisiana law, a plaintiff must allege facts showing "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[137]

---

[135] Plaintiffs also appear to raise a claim under § 1983 for failure to supervise in violation of the Eighth and Fourteenth Amendments. Rec. Doc. 1 at 15. As a preliminary matter, the Eighth Amendment serves to protect the constitutional rights of convicted inmates, not pretrial detainees. *Jacobs*, 228 F.3d at 393. As discussed above, for a corporation can be held liable under § 1983, Plaintiffs must show a pattern or policy that led to a constitutional violation under *Monell*. Plaintiffs appear to allege that Defendants failed to supervise their employees when they placed Guillot in solitary confinement "in spite of his obvious need for psychiatric care." Rec. Doc. 1 at 15. CHJ and Ironshore do not address this claim in the motions to dismiss. Accordingly, the Court will not consider whether Plaintiffs have stated a claim for failure to supervise *sua sponte*.

[136] Rec. Doc. 1 at 1.

[137] *McCoy v. City of Shreveport*, 492 F.3d 551, 563 (5th Cir. 2007) (quoting *White v. Monsanto*, 585 So.2d

In the Complaint, Plaintiffs allege that "Defendants [sic] practices, procedures, and policies were a proximate cause of the intentional infliction of emotional distress. Defendants [sic] supervision of the [Jefferson Parish Correctional Center] personnel and Correcthealth staff was a proximate cause of the intentional infliction of emotional distress. Defendants actions and inaction were intentional and caused emotional distress to Plaintiffs."[138] Plaintiffs do not allege any facts to show: (1) extreme and outrageous conduct by CHJ, (2) severe emotional distress, or (3) intent by CHJ to inflict emotional distress.

Although Plaintiffs have not pleaded facts to form the basis of an intentional infliction of emotional distress claim, this does not mean that they could not do so. Short of granting a motion to dismiss, the Court may grant Plaintiffs leave to amend the Complaint. Accordingly, at this time, the Court will deny CHJ and Ironshore's motions to the extent they seek dismissal of Plaintiffs' intentional infliction of emotional distress claim and grant Plaintiffs leave to amend the Complaint to address these deficiencies, if possible.

### V. Conclusion

For the reasons discussed above, Plaintiffs have not alleged facts to show a pattern or practice by CHJ of denying adequate medical care to suicidal inmates. Furthermore, Plaintiffs have not stated a claim for intentional infliction of emotional distress. Rather than dismiss these claims at this time, the Court will grant Plaintiffs leave to amend the complaint. If, upon amendment, Plaintiffs fail to provide sufficient factual support for each element of each claim, upon motion by a party, the Court will dismiss the claims. Accordingly,

---

1205, 1209 (La. 1991)) (internal quotation marks omitted).

[138] Rec. Doc. 1 at 16.

23

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Exclude Attachments[139] is **DENIED**.

**IT IS FURTHER ORDERED** that CHJ's Motion to Dismiss[140] and Ironshore's Motion to Dismiss[141] are **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to amend the complaint within fourteen days of this Order to cure the deficiencies noted, if possible. If upon amendment, Plaintiffs fail to provide sufficient factual support for each element of each claim, upon motion by a party, the Court will dismiss the claims.

**NEW ORLEANS, LOUISIANA,** this __1st__ day of March, 2021.

_Nannette Jolivette Brown_
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[139] Rec. Doc. 23.

[140] Rec. Doc. 11.

[141] Rec. Doc. 17.